Next case here on number 212A134, people of the state of North Carolina, Appellant Abilene v. Scott A. Johnson, Appellant Appellant, arguing for the Appellant, Mr. Kerry Getsch, arguing for the Appellant, Mr. Kerry Getsch. Good morning, Counsel. Mr. Getsch? Good morning, Your Honors. Good morning. Again, my name is Kerry Getsch, and I represent the Appellant, Mr. Scott Johnson. The state charged Mr. Johnson with aggravated criminal sexual abuse, and the jury was instructed that it should find him guilty if they found that he committed an act of sexual conduct with E.H., who was his live-in girlfriend's younger daughter. The charged offense was hand-to-vagina touching, a sort of rubbing of the upper thigh where his hand comes in contact with her vagina over the shorts she was wearing. The problems in this appeal did not have to deal with the evidence of the charged contact, but with the other crimes evidence that the state sought to introduce under Section 115-7.3. 115-7.3 allows for other crimes evidence to be introduced, but it also specifies that that evidence has to relate to an actual crime. And it enumerates a list of crimes that are acceptable, basically sex crimes. So, in other words, both the charged conduct and the other crimes conduct have to be one of those enumerated offenses. That's a problem for the state in this instance, because a lot of the other crimes evidence that they introduced wasn't actually a crime or an offense that was enumerated in the statute. Well, one of the – one of them was certainly the Lake Koshnagon – I'm not sure I'm pronouncing it correctly – Wisconsin incident certainly was a crime, or it met that test. Isn't that correct? It's arguable that it was, and so for that reason we put it in sort of another category. But had the judge maybe had a hearing, a proper hearing on it, we might have found it. Because E.H. at first contested it was an accident. She told her mom that she thought that that incident was an accident. Mr. Johnson also contested that it was an accident. So if the judge had actually considered it and found it to be an accident, then it wouldn't fit as another crime because it wouldn't have been a crime. He would have had to have the requisite intent. But admittedly, the action of touching a breast could be arguable, and so it might have been admissible under the statute. Right. And if it was, it's your contention that there wasn't a proper weighing of the probative value versus the prejudicial effect. Isn't that correct? Correct. But yet if we look at what's required for that, certainly this incident met the test of being approximately close to the incident that was charged. And I believe you concede that. Correct. The timing of the incident was relative. Her testimony was that it happened sometime in August, but his was that it happened on July 5th, which would have been the next day. Right. And then the other criteria is factual similarity, and certainly I don't know what could be stronger than having the same victim involved so that it would meet the test of factual similarity as well. Well, I would argue that it does not because other than the victim, that's the only similarity that there is. The contact at the lake, we'll call it the lake incident, was bare skin to bare skin contact. It was contact that was done with other people around, and it was prolonged. The contact in the charge defense was not skin on skin. It was over the clothes, and it was of a total different nature. It was, you know, hand on leg, touching vagina versus breast. So you're saying you think the type of contact trumps the fact that it was the same victim and evaluating similarity? I wouldn't say it trumps it, but if you consider the other factors, and the third consideration when weighing probative versus prejudice is it's kind of a catch-all other factors of invincibility. And if you look at it, E.H. told her mom that the contact at the lake was an accident. Her retelling of it six months later is, in a way, unbelievable because she says that the contact lasted for five minutes. In the statement, its motion said five to ten minutes. The idea that he was touching her bare breast for five to ten minutes while her siblings were swimming there and her mother was 40 feet away on the beach is pretty unbelievable. That that length of contact could happen without anyone noticing, that she would then say it was an accident. And then so these sort of other factors that the judge didn't really even get into definitely weigh against admissibility for the other kinds of evidence. Counsel, can we turn for a moment to your original argument? I think you raised an issue, a legitimate issue. Could the jury have been confused and convicted the defendant on incidences that did not consist of actual crimes? However, in looking at the instructions, wasn't the jury specifically given the IPI instruction that defines sexual contact directly to the clothing of the sex organ of the victim? So based on that, that definition regarding the sex organ, why would the jury be confused over the Lake incident? Well, I think for us, we understand that sex organ in legal terms means penis or vagina. But I would argue that the jury, sex organ could also mean breast. I mean, hand-to-breast contact certainly meets the common definition of sexual conduct in most instances. Well, in what, absent the description of sex organ, correct? Correct. But I guess my point is that I don't know that defining sex organ, they don't define sex organ then, which I think could lead the jury to believe, I mean, hand-to-breast. But the way that the state argues, they bring in all this other evidence and they argue it extensively. I think the instruction still isn't clear enough. Really, all they had to do was say hand-to-vagina, which is what they do in Perez. However, in light of that, you just triggered a thought here. I believe in considering this whole thing in totality of the circumstances and the arguments at trial, didn't defense counsel specifically say, here the defendant allegedly placed his hand on the vagina of the victim, that's the charged conduct. So the arguments themselves, state and defense called that out. The defense attorney says that's the charged conduct and describes the act. Then I think it mutes this argument that you're having, the jury got confused. The defense attorney defined it for them. The argument isn't just that the jury got confused. The argument is also that this other kind of evidence basically comes in and makes him look creepy. And the jury... Well, what's our standard? That's abuse of discretion, is it not? Not in interpreting the statute. If you're looking at these other incidences that come in, they don't meet the statutory definition. The incidence of driving... But the trial judge didn't admit them under that provision. He specifically used other language and stated the purpose for which they were being admitted, for evidence with regard to intent, lack of mistake, et cetera. That actually applies to every piece of evidence that came in. The state, in its motion, never sought to introduce it for propensity. The state always sought for these three limited, all three pieces of evidence. The state is now saying, well, it was admissible for propensity. But it never contested that at trial. And, in fact, when it argued the motion, in looking over my notes and preparing for this argument, I noticed the state specifically says, we're not bringing in this evidence for propensity, any of it. It wasn't brought in for propensity, was it? Right, none of it was. And so that all of those limiting, the fact that the judge said those are admissible for intent, motive, and lack of mistake actually applies to the link incident as well. So the judge wasn't defining, saying, oh, these other two are admissible under the common law, and this is admissible under the statute. The judge was saying, these are all admissible under the statute. Were they all relevant? I agree. Were they all relevant? I don't believe that they were. I mean, if the judge had done the proper weighing of them, then maybe we could look into see why the judge thought it was relevant. I mean, I think- Let me ask you this. And there's case after case that says the relationship between the victim and the defendant is relevant. And a victim should not be required to just testify to an isolated incident where there have been other crimes, wrongs, or acts, which is the Illinois rule of evidence and also the federal rule. It's crimes, wrongs, or acts. It's not limited to just what would fit the definition of a prior crime. So why should- This is- Essentially, your argument has to be that the evidence was not relevant. Explain to me why that evidence of the relationship was not relevant to the victim's testimony that this touching occurred. Well, the relationship was definitely relevant, but that's why these sort of acts can be misconstrued. This was more like a father-daughter relationship. And so asking my-when I ask my daughter, do you want to cuddle, that means one thing. But then in hindsight, if two years from now she suspects me of being kind of creepy, she might look back and say, well, that was creepy, too. But that they were in a father-daughter relationship doesn't mean that he committed this crime with the sexual intention. I mean, that's what's tricky about this case is that it's more of a father-daughter relationship. And so all of these acts- That's true of scores, hundreds, thousands of criminal sexual abuse cases where it's someone who is otherwise a trusted adult that turns out to be an uncle, a neighbor, a priest, a coach. It happens. Right, and that's why Donahoe says you have to make a meaningful assessment. And that's not what the judge did here. The judge just said, well, you know, I agree with the state and the state's motion, and I'll let it enter what the state is wanting it in for. But we need that meaningful assessment to know, A, whether we can even trust that, you know, these things are probative. I mean, what you're saying is that, yes, of course they're probative. And the state's argument is, you know, yes, everything is probative. It discusses the relationship between the daughter and the father or, you know, the father figure. But it's not probative necessarily that a crime was committed. And that's what the argument is. And that's why the statute requires that you're admitting actually something that's criminal, not something that could be misconstrued or makes the guy look creepy. Oh, well, he was trying to touch her, or he asked for a hug and a kiss. I mean, asking for a hug and a kiss, how is that? Was there a limiting instruction given here? A limiting instruction? Yes, the IPI 3.14 was given in telling them what they could use it for, intent, lack of mistake. But it wasn't actually clear from the instructions what was other crimes evidence and what wasn't. And that's part of the problem. This other crime, and so the jury was instructed to find him guilty if there was an act of sexual conduct. As defined in the instruction. Right. Right. And so even though the lawyers made the distinction, this isn't like Perez in a case where the instructions themselves can make the distinction. They can't read the instructions and make that distinction. And they're told that the lawyer's argument, I mean, they're given the instruction that lawyers' arguments are just arguments. But let me ask you this, Tony. Well, excuse me, but that they can help you understand the evidence and the instructions, so it isn't that the jury's to ignore the argument and not listen to the content because, I mean, there's a reason for these arguments. Well, right. Okay. But there's also a reason that they're told that the instructions are the instructions, follow the instructions. Well, we have the I.P.I. here. What could the trial judge or should the trial judge, in your opinion, done differently? He gave the standard I.P.I. instructions. He decides that evidence of other wrongs, if you will, bad acts, should come in on intent, motive, and lack of mistake. That gives the standard I.P.I. instructions. And most judges will tell you they're going to probably get into trouble if they start giving non-I.P.I. instructions. He gives the instruction defining sexual conduct in the I.P.I. What could he have done differently? He could have defined the actual sexual conduct that was at issue. How does he do that? The reason the I.P.I. is not enough in this case, is ineffectual, is that other kinds of evidence, it doesn't take account for when other kinds of evidence comes in. So the I.P.I. says inactive, choose sexual penetration or sexual conduct. You insert sexual conduct. But like they did in Perez, where there's multiple instances of sexual conduct, they defined hand-to-breast. We, the jury, find the defendant guilty or not guilty of hand-to-breast sexual conduct. We, the jury, find the defendant guilty or not guilty of penis-to-butt sexual conduct. That's what they did in Perez, and that's what they should do when they introduce other kinds of evidence. Do you have any case law that mandates it has to be done or it's reversible? No, there isn't a case that says that. This is a unique situation. First of all, because the state introduced other kinds of evidence that wasn't other crimes under the statute. And second of all, because the instructions themselves didn't define the act of sexual conduct that was at issue when there was two potential acts of sexual conduct because of the other kinds of evidence. It's a unique situation, admittedly. But that's what makes it different from Perez or other cases like that, where the instructions themselves are specific enough for the jury to find that those instructions... I see your point, jury, quote-unquote, could be confused, possibly confused, but do we decide cases based on that? We have to be implicit in what you're saying when you are candid about it, because you're arguing that the jury didn't follow probably the instructions, where sexual conduct is clearly defined in the IPA. Actually, my main argument is that the state didn't abide by the statute, and they introduced other kinds of evidence that wasn't a crime. But they have the right to do other crimes. They have the right to introduce evidence on motive, intent, length of mistake, all that stuff, don't they? But they should hold a proper hearing on it. They held a 115-7.3 hearing. They never held a hearing for common law admissibility. If the state had just called the witness and she testified about the relationship to touching, any conversations, and simply didn't testify concerning the touching of the breast, would a hearing have been required under the rules of evidence? A pre-trial hearing, you're saying? Does a pre-trial hearing have to be required for a victim to testify to the nature of the relationship with the alleged offender? No, the victim doesn't have to testify, but the judge has to make a meaningful assessment of the reliability of the evidence. In every case involving an allegation of criminal sexual abuse, there has to be a pre-trial hearing as to what the victim is going to say about the relationship, the conversations, the whole grooming process that led to the event? No, not the victim. But Donahoe says you have to engage in a meaningful assessment. I'm not talking about other crimes evidence. I'm talking about otherwise relevant evidence in the absence of mistake knowledge and to show the existence of a relationship. You're saying that there has to be a hearing prior to trial to determine whether or not the victim's testimony along those lines is admissible? Well, if the state is introducing other acts evidence for purposes of intent, lack of mistake, or motive, there's usually a motion filed. Again, usually is not what's required by law. Is a hearing required to invoke the rules of evidence? I would argue yes. In an instance where you're introducing things that try to color the character of the defendant in a negative way, I mean, hopefully if he came out. All the testimony in a case where the defendant's charged with a crime like this is going to portray him, maybe not all the testimony, but a substantial part of it is going to color him in a negative way. My question is conversations, touching on the shoulder, rubbing the back, those types of things that do not amount to another crime, but are certainly relevant. Does there have to be a hearing for the trial court to predetermine whether or not that type of evidence is admissible? Not necessarily, but then the defense could object at trial and then, you know, there might be delays at trial figuring all this stuff out. So, I mean, it would be more efficient, of course, to figure it out beforehand. I think the answer is it would be advisable to do that, but it would not be legally required. The victim could say something I understand. The judge could then make a ruling that it's being admitted for the limiting purpose of that. I think it's advisable because, as you say, the defense is going to object. They had no notice. There are going to be delays. The jury is going out. But I don't think it's required under the law to have a specific formal hearing, no. Correct. All right. Mr. Goetz, you'll have additional time for rebuttal. Thank you. Thank you. Mr. Jacobs? Good morning. I'm Barry Jacobs on behalf of the people of the Police and the Court of Counsel. This case is very similar to the Perez case that was decided by this Court. It's the state's position that due to some confusion, I think, in the record of the various motions in Limine that were held, the defendant puts forth the argument that all of this other crime's evidence was admitted only under the 115.7.3 exception, having the other crime's evidence. It's the state's position. The record, as I said, the court first considers the incidentally cussed canon, makes a ruling on that, and says that is an offense, and I believe that the defense counsel agreed that this was an offense, and the public counsel does as well, that it's arguably an offense under the enumerated offenses in 115.7.3. The court then goes on to consider a few other motions in Limine, and then makes a ruling that these other incidents, the request for cuddles, the request for a kiss and for cuddles, are admissible under common law, under Rule 404, to show intent and absence of mistake. So it's the state's position that the court didn't err here. The court, in fact, held a hearing and made a ruling after conducting a policy test. It's evident in the court's consideration of the incident at Lake Koshkannon that it considered that to be the more probative evidence, and therefore found that to be, of course it had to be an offense, but found it to be more probative, allowed that in under 7.3. The court then said these other offenses are not necessarily offenses, but at common law, the evidence of prior incidents or misconduct between defendant and the same child were always admissible. So the state's position is there was no error committed in the way that these incidents were admitted. Let's assume that we were, well, we decided to agree with that position, but to which defense counsel says, well, wait a minute, that's all well and good, but how do we know the jury wasn't confused and overlapped in their consideration of guilt on the actual charge conduct? They mistook the probative value of these other incidences that were not crimes, and they considered them as crimes in deciding his guilt or innocence on the charge conduct. How do you respond to that? Well, as Your Honor has acknowledged, there was a limiting instruction given both before that evidence came in and also after the closed evidence as a written instruction advising the jury that they would hear other crimes' evidence. It could be considered for intent, absence of mistake, motive, but that they weren't relying on that. So the jury, that would lessen the ability for the jury to be confused about anything. Furthermore, in both opening arguments, closing arguments, both the prosecution and defense counsel clearly laid out what the charge conduct was versus what the other incidents were. In fact, defense counsel, unlike Perez, where defense counsel wanted to quote from the indictment and that was not allowed, defense counsel in this case actually did say the indictment reads as follows. The conduct is the hand to vagina touching on July 5th, 2010. Does it also go to your argument or how does that then respond to his argument that the jury got confused and might have thought the touching of the breast constituted sexual conduct? I'm sorry, excuse me? What about his argument that the touching of the breast might have been construed by the jury as sexual conduct? How is that handled in this case that makes it appropriate to oppose further? I'm sorry, the last thing you said, to oppose? He's saying that the jury might have considered touching of the breast as sexual conduct. Yes. So how do you respond to that argument? Again, that was clearly laid out that in, well, of course the court did give the instruction of what sexual conduct constituted, saying that that was. Would the jury have been confused on the sex organ with the touching of the breast? That seems to be what he's alleging. It's a safe position that those words would be given the ordinary meaning. Sexual organ does not necessarily connote breast. Sexual organ, I believe the common meaning would be the actual sexual organ of the male or female. But in addition to that, the arguments were clearly it was hand and vagina. Yes. I mean, the arguments were explicit and repetitive about what is charged conduct. So he's saying even if there was some remote possibility that the jury would have ignored the plain language of the instructions, defense counsel himself pointed to the charged conduct. Yes, I believe Justice McClaren in Perez was concerned about a jury for the first time after receiving instructions, after hearing the evidence without a preemptive instruction, considering the evidence and being confused in that way. In this case, as I said, in the opening statements, both the prosecution and the defense counsel clearly defined the charge conduct being that hand to vagina touching on July 5th. The late Koshkin on July 4th, that the hand to breast and not being part of the charge defense. So it's very unlikely from the state's position that the jury could have been confused by this evidence. The defendant gave the statement to the police, correct? He did. He didn't deny any of his touching. Yeah, he just gave an innocent explanation to each. Yes, and that's why it's relevant to show the evidence of mistake for his intent. All these incidents. But as I originally started to say, the way that this motion, these motions eliminate, McClaren there was a hearing held, prosecution filed two motions to eliminate, or more than that. But on the second one, they sought to admit all these incidents. Late Koshkin on an incident or several incidents of asking for cuddles between, I believe, July of 2010, January 1st, 2011, and the incident going to the store to buy a pair of pants, which was December 31st, 2010. So they sought to deny all this. Defense counsel brought a motion to eliminate, seeking to borrow this evidence. So there was an actual hearing held in those motions that lays out what the various arguments are, the similarity of the late Koshkin offense to charge conduct. And with regard to that offense, how do we know that the trial court balanced the probative value versus the prejudicial effect, with regard to that one man coming in under the statutory provision 7.3? The court actually, I think I hinted at it, indicated that it felt that the late Koshkin on evidence was the most probative of the defendant's intent. Although it was admitted under 7.3, it could have been used to show propensity, just like Perez. It really was only argued as intent, but in absence of mistake. In addition to that, the court made a finding that this evidence, this late Koshkin on evidence, was factually distinct enough, because it involved the breast versus the sex organ, that the court felt there wasn't the potential for jury confusion. So it's a state's position that this shows the court's thought process, that it was weighing these probative values and prejudicial effect, and making the appropriate ruling based on that. Turning to the second argument, there is no instruction that's required. There is no case law indicating that a limited instruction would be required, particularly in the case of a 115-7.3 admission. Certainly no limited instruction, as Perez found, is required. In this case, the defendant did benefit from the limited instruction given twice. So again, the people's position is there was no error, and that this argument should be considered waived, because it simply wasn't brought up by the defendant in the trial court. Thank you. Founders, are there no other questions? No. Thank you.  Thank you very much, counsel. At this time, the court will take the matter under advisement and render a decision in due course. Court is adjourned for the day. Thank you very much.